In the matter of the estate of NELLIE CURLEY, deceased.

[Submitted February term, 1942. Decided April 23d, 1942.]

*Messrs. Cruse, Becker & Longstreet* (*Mr. Howard R. Cruse* and *Mr. Alfred R. Becker*), for the executrix-appellant.

*Mr. Bernard Solomon* and *Mr. Lawrence Willner*, for the respondents.

The opinion of the court was delivered by

BODINE, J.

This case involves the validity of a gift by a mother to her daughter of something over $10,000. A relation of trust and confidence existed. The problem is: Do the proofs show that there was no deception, no undue influence used and that all was fair, open and voluntary and that it was well understood? *In re Fulper, 99 N. J. Eq. 293.*

The master to whom the matter was referred so found, but on exceptions to his report the same was reversed and on appeal to the Prerogative Court the decision of the Orphans Court was affirmed. This was error.

In September of 1938, Mrs. Curley sold $10,000 of United States bonds and the proceeds were credited to her account in the Trust Company of New Jersey. She was, at this time, in her sixty-sixth year and although she had been seriously ill in the winter, she had recovered her health to some extent. Her mind was clear and she attended to her affairs as far as possible.

On October 17th, 1938, accompanied by her daughter Mae, she went to the bank and her account was changed to a joint account with her daughter. This was not what she wanted, so she directed the transfer of the proceeds of the bonds to her daughter's account. This was accomplished by signatures and other formalities. Two bank officers attended to the matter. The transaction appeared to them a routine one. The details of the transaction were, of course, not remembered by them. Mrs. Curley appeared to be as she had always been, except that she was older.

The disposition was a very natural one. Mae Curley had been a faithful daughter. She had gone to work as soon as she was able. She had cared for her mother in her illness. She had given up her position when her mother needed help in the performance of her household duties. Her marriage had not been happy and was soon terminated. Her resources were slim and she was of an age when the search for a position would be difficult. A married daughter, Gertrude, knew of the gift shortly after it was made. She would profit if the gift were invalidated. Her testimony in support of the gift should, therefore, be given the greatest credit. Mrs. Curley had full opportunity to receive independent advice. She was attending to the business herself as she had always done. If she was doing that which she did not desire to do, the bank officers would have recalled some circumstance which would have taken the transaction out of the ordinary. It was a most natural thing for a wise woman to do. She reserved for herself a working bank balance, a house in Jersey City, and readily marketable securities worth more than $4,000. She was in fairly good health and had reserved, as events proved, much more than she needed. The transfer, even though there was no independent advice, was not improvident. Hence, there was no need for such advice. *Morrison* v. *Morrison, 94 N. J. Eq. 646; affirmed, Ibid. 801.*

The house was willed to Mae, showing an intention to favor the daughter who had helped her for years. Four other daughters were left $1 each. Mae and Gertrude and the two sons were residuary legatees. The sons sought to secure a share of the gift so made to their sister. The master did not

believe their testimony and it would be difficult to believe it. They appear to be men without moral balance, lazy, greedy and had been a source of great worry to their mother. Money in their hands could serve no purpose save to encourage self-indulgence and gambling. The proofs establish that there was no deception and no undue influence. The bank officers' testimony established that the whole transaction was fair, open and well understood. Slight variations in testimony are to be expected, when witnesses are honest. Powers of observation vary. It seems clear that Mrs. Curley approached the transfer independently, and in a desire to do justice to a daughter who had sacrificed her life in devotion to her and her younger brothers and sister.

Appellants' brief is silent as to rulings with respect to certain life insurance policies, so those matters are not before us for decision. The award of costs and counsel fees need not be considered as they fall as against the appellants with the reversal. However, the stenographer's fees of $137.50, master's fees of $400, and a counsel fee of $750, all of which the recipient of the gift was directed to pay, brought the cost of defending her action to a high point.

The practice of referring Orphans Court matters to a master should not be encouraged. In a democracy, the cost of litigation should not fall with too heavy a hand upon the litigant as it tends to deny justice to those less able to bear the expense. To that end, the legislature enacted a statute to be found in *N. J. S. A. 2:31-66.*

The decree will be reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 13.